[Crim. No. 22845. July 28, 1983.]

In re MARK L., a Minor, on Habeas Corpus.

## COUNSEL

Friedman, Sloan & Ross, Stanley J. Friedman, Paul G. Sloan and Lawrence A. Gibbs for Petitioner.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart, Kristofer Jorstad and Mary A. Roth, Deputy Attorneys General, for Respondent.

## OPINION

**GRODIN, J.**—In juvenile court, Mark L., a minor, entered a no contest (Cal. Rules of Court, rule 1354(f)) before a San Mateo Superior Court Commissioner to an allegation that he committed felony burglary. (Pen. Code, § 459.) At a subsequent dispositional hearing, the commissioner declared Mark a court ward and released him to his parents' custody under a strict county probation program. Acting on his own motion, a juvenile court judge ordered rehearing (Welf. & Inst. Code, § 253), overturned the commissioner's dispositional order, and directed Mark's placement in the California Youth Authority (YA) for a 90-day diagnostic evaluation. (*Id.,* § 704.) Mark seeks a writ of habeas corpus, asserting that the YA commitment is void, because the juvenile judge had no power to alter the commis-

sioner's disposition. Under the circumstances of this case, we conclude that the contention has merit.

1. *Facts.*

A juvenile petition (Welf. & Inst. Code, § 602)[1] charged Mark with five counts arising from two late-night entries into homes in Atherton. Counts I through III alleged that on September 17, 1982, at the home of Concepcion Woodman, he committed first degree burglary for the felonious purpose of false imprisonment (Pen. Code, §§ 236, 459), attempted false imprisonment (*id.*, §§ 236, 664), and unlawful use of a mask or disguise (*id.*, § 185). Counts IV and V asserted that on July 22, 1982, he committed the same burglary and attempted-false-imprisonment offenses at the home of Lynn Pickart; no use of a mask or disguise was charged in the Pickart incident.

According to court reports, Mark, 14, had entered the bedrooms of neighbors and tried to bind and gag the sleeping female occupants. In the Pickart incident, he carried a kitchen knife and an unloaded BB gun. In each case, he fled when the victims awoke and resisted, leaving his jacket behind the second time. He had no prior juvenile record.

Interviewed by psychiatrists and the probation department, Mark said he never intended to hurt anyone but showed little understanding of his motives. All the professional evaluators thought he suffered from severe adolescent adjustment problems, for which he was already in therapy. However, their unanimous view was that Mark was not seriously antisocial. He seemed naive, cooperative, and amenable to treatment.

On October 7, 1982, the parties appeared before James Browning, a superior court commissioner. By prior agreement, Mark was prepared to enter a no contest to count IV, burglary of the Pickart home, in return for dismissal of the remaining counts of the petition. Under the terms of the bargain, disposition was left open.

While advising Mark of the consequences of his plea, Browning twice noted that disposition of the case would be "solely up to the Court." The commissioner cautioned that "the maximum disposition, I'm not saying the Court is going to impose this maximum, but the maximum the Court could impose on this Count would be six years in custody."

After Mark entered his plea and the remaining charges were dismissed, Browning announced the parties' agreement that disposition be continued

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

for further psychiatric and probation reports on Mark's suitability for the county Placement Intervention Program.[2] The commissioner emphasized that "the boy has a right to have the same judicial officer who received the no contest plea impose the disposition," but there were scheduling problems because Browning's normal court assignment was in Redwood City. After discussion, a dispositional hearing was set for October 22, a date convenient to Browning.

The dispositional hearing took place as scheduled. Browning indicated he had read the new report of Dr. Fricke, the court-appointed psychiatrist. It disclaimed a sexual motive in Mark's conduct and recommended he be returned to the community with "intensified treatment efforts" including restitution and apologies to the victims. The deputy district attorney, on the other hand, recommended a maximum 35-day commitment to YA for further diagnostic evaluation.

Browning declined to take that route. He adjudged Mark a court ward, referred him to the Placement Intervention Program for 90 days, specified separate psychiatric therapy for Mark and his parents, and imposed additional restrictions on Mark's movements and associations.[3] Further proceedings were scheduled for January 21, 1983, and Mark was released to the physical custody of his parents under the conditions set in the order.

On October 29, Presiding Juvenile Judge Capaccioli advised Mark's counsel that he had ordered a rehearing of Commissioner Browning's disposition. Counsel lodged no objection on the record, and the rehearing was held on November 2. Both Fricke and Mark's probation officer testified that the YA setting was unsuitable, disruptive, and physically dangerous for Mark. Nonetheless, Judge Capaccioli placed Mark in YA for a 90-day diagnostic evaluation, ordered him immediately detained in juvenile hall, and continued final disposition in the meantime.

Mark sought a writ of habeas corpus in this court, and we issued an order to show cause. On November 16, we stayed the YA commitment pending resolution of his petition. On November 24, we directed that Mark be re-

---

[2]The program is used as an alternative to out-of-home placement. The minor is declared a court ward and legal custody is taken from the parents. However, the minor may remain in "home supervision" under the terms of a strict "behavior contract" signed by the minor and his parents. Under the terms of the contract, the minor may be moved back and forth between home and juvenile hall at the probation officer's discretion. The initial referral is for 90 days, after which a progress hearing is held to determine whether another 90-day referral is appropriate.

[3]Mark was not to go out or stay home alone and was not to have contact with the victims except as arranged by the probation officer. He was to write supervised letters of apology and offer restitution.

leased in the interim to his parents' custody "under the terms and conditions" of the October 22 disposition by Commissioner Browning.

## 2. *Habeas Corpus as Proper Remedy.*

■ Habeas corpus is available to obtain relief from unlawful restraint occasioned by a void judgment or order. (Pen. Code, § 1473.) Although the writ is not a substitute for appeal (*In re Walker* (1974) 10 Cal.3d 764, 773 [112 Cal.Rptr. 177, 518 P.2d 1129]), the YA commitment order challenged here was not a final judgment subject to appeal. (§ 704, 800.) Because the challenge is to the court's jurisdiction to make the order, the minor's failure to object to the conduct of the rehearing by the juvenile court judge did not constitute a waiver. (*Griggs* v. *Superior Court* (1976) 16 Cal.3d 341, 344, fn. 2 [128 Cal.Rptr. 223, 546 P.2d 727].)

## 3. *Validity of Order on Rehearing.*

The Juvenile Court Law provides that many matters may be heard and decided in the first instance by referees rather than judges. (§§ 247-250.)[4] However, referees, sitting as such, are but "subordinate" judicial officers with limited powers. (Cal. Const., art. VI, § 22; *In re Edgar M.* (1975) 14 Cal.3d 727, 732 [122 Cal.Rptr. 574, 537 P.2d 406].) All their findings and orders are subject to rehearing de novo by a juvenile court judge, either at the minor's request or on the judge's own motion. (§§ 248-254.)

■ Nonetheless, Mark argues that the rehearing order in this case was beyond Judge Capaccioli's power. He contends, among other things, that the rehearing violated his right to disposition by the same judicial officer who took his negotiated plea. We agree and find the claim dispositive.

■ In *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R. 4th 1171] this court held that "whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inher-

---

[4]The Juvenile Court Law makes no provision for the use of *commissioners* in juvenile court. They have no power as juvenile referees unless appointed as such by the presiding judge of the juvenile court. (§ 247; *In re Edgar M.*, (1975) *supra,* 14 Cal.3d 727, 733, fn. 6 [122 Cal.Rptr. 574, 537 P.2d 406].) The limited record before us does not disclose Browning's appointment as a juvenile referee, although the parties do not dispute Browning's authority to sit in that capacity.

ently significant factor in the defendant's decision to enter a guilty plea. [Citations.]'' Thus, the sentence imposed by a judge other than the one who took the plea "cannot be allowed to stand. [Citations.] . . . " (Pp. 756-757.)

*Arbuckle* has been extended to dispositions by judges in juvenile cases. (*In re Thomas S.* (1981) 124 Cal.App.3d 934, 937 [177 Cal.Rptr. 742]; *In re Ray O.* (1979) 97 Cal.App.3d 136, 139-140 [158 Cal.Rptr. 550].) ▮▮▮ The only issue remaining is whether it applied to the bargained plea in this case, since the plea was entered before a juvenile court officer other than a regular judge.

We emphasize that here, as in *Arbuckle,* the record indicates an actual assumption by the court and parties that the officer taking the plea would have final and exclusive dispositional authority. Browning made repeated references to the dispositions "the Court" could or might impose, "though I'm not saying" what the court "is going to" do. In context, Browning's interchangeable use of the personal pronoun with the phrase "the Court" implied that he and "the Court" were one and the same. (Compare *Arbuckle, supra* 22 Cal.3d at p. 756, fn. 4.)

If any doubt on that score remained, Browning laid it to rest by announcing Mark's right to have "the same judicial officer" who took the plea handle the disposition. That was an obvious reference to *Arbuckle,* and the deputy district attorney did not object. Despite Browning's usual assignment elsewhere, considerable effort was expended to ensure that he, rather than some other judge or referee, would act at the dispositional phase. There seems ample basis to conclude "that the plea bargain herein was entered in expectation of and reliance upon [disposition] being imposed by the same [judicial officer]." (*Id.,* at p. 756.)

Yet any attempt by a referee, sitting as such, to make a final or binding disposition exempt from review by a juvenile judge would violate express statutory provisions (§§ 250-254); arguably it would contravene the "subordinate judicial duties" clause of the Constitution (art. VI, § 22, *supra*) as well. (See, e.g., *People* v. *Oaxaca* (1974) 39 Cal.App.3d 153, 158-159 [114 Cal.Rptr. 178].) The question arises whether those facts defeat the otherwise apparent *Arbuckle* bargain, either because such a bargain would be unenforceable, or because no *reasonable* expectation or reliance on Browning's final authority could have arisen. The Attorney General argues further that, even if the plea bargain did include an *Arbuckle* condition, Judge Capaccioli had the power to disregard it; the remedy for his breach of the bargain is simply to allow Mark to withdraw his plea.

The answer to these concerns seems relatively simple. The parties may stipulate that a referee is presiding in their case as a temporary judge. (Cal. Const., art. VI, § 21; Cal. Rules of Court, rule 1316(b); see *In re Perrone C.* (1979) 26 Cal.3d 49, 57 [160 Cal.Rptr. 704, 603 P.2d 1300].) Both commissioners and referees may, if the parties properly stipulate, act as temporary judges. (§ 250; Code Civ.Proc., § 459.) A temporary judge has full judicial powers, and his orders are as final and nonreviewable as those of a permanent judge. (§ 250; Cal. Rules of Court, rule 244(a).) We conclude that the parties' conduct in this case constituted a sufficient stipulation that Browning was acting as a temporary judge.

Respondent urges that a temporary judgeship cannot be conferred by mere participation in a proceeding. ■ However, several cases recognize that voluntary participation before a subordinate officer who lacks authority in that capacity may amount to an agreement that he acted as a temporary judge.

In *Estate of Soforenko* (1968) 260 Cal.App.2d 765 [67 Cal.Rptr. 563]. an objector to a final accounting was represented by counsel who voiced no objection to hearing by an unauthorized commissioner, participated fully, cross-examined witnesses at length, and waived findings. The Court of Appeal construed "this deportment on the part of appellant's attorney" as "tantamount to a stipulation" that the commissioner was acting as a judge pro tempore. (Pp. 766-767.) ■ ■ ■ ■ Similar results were reached in *People* v. *Oaxaca, supra,* 39 Cal.App.3d 153, 161-166 (conviction and sentence on negotiated plea) and *People* v. *Surety Ins. Co.* (1971) 18 Cal.App.3d Supp. 1, 3 [95 Cal.Rptr. 925] (forfeiture of bail).[5]

---

[5]We recognize that the Rules of Court provide detailed procedures for conferring temporary judicial power on a juvenile referee. The parties' stipulation to that effect must be "in writing." The selection must be approved by the "presiding judge," or, if there is none, "the judge in whose department the case is pending." The referee must subscribe an oath of judicial office and obtain an assignment from the court to hear the matter as a judge. (Rules 244(a), 1316(b).) In the usual case, therefore, it may not be possible to vest a referee with full judicial power merely by participating before him.

However, under rule 244(b), none of these procedures need apply "to the selection of a *court commissioner* to act as a temporary judge." (Italics added.) Respondents "concede" that rule 244(b) governs in view of Browning's status as a commissioner.

We agree. When commissioners sit in juvenile court under appointment *as referees,* their "powers" *in that regard* derive exclusively from the laws defining referees, and "are not affected by the fact that they hold the additional and separate office of court commissioner." (*In re Edgar M., supra,* 14 Cal.3d 727, 733, fn. 6.) But their authority to sit *as juvenile judges* may properly arise under the laws governing commissioners. Here the presiding judge of the superior court had expressly empowered Browning, as commissioner, to sit in a judicial capacity, upon proper stipulation of the parties, in *any* cause assigned to him in *any* department, including juvenile. (See Cal. Const., art. VI, § 21, *supra;* Code Civ. Proc., § 259, subd. (5).) The designation of court officers to act as juvenile court *judges,* of course, is within the express authority of the presiding judge of the superior court. (Welf. & Inst. Code, § 246.)

Respondent points to *People* v. *Tijerina* (1969) 1 Cal.3d 41 [81 Cal.Rptr. 264, 459 P.2d 680], and *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297], in which this court ruled that stipulations conferring necessary judicial authority were lacking. In both of those cases, however, the party asserting the absence of a stipulation had not initiated the disputed proceeding and had participated involuntarily.

In *Tijerina,* a criminal defendant invoked the stipulation requirement against the order of a court commissioner revoking his probation. As *Surety Insurance* later explained (18 Cal.App.3d Supp. at p. 3), the defendant in *Tijerina* was not a willing participant in the revocation hearing, since he had requested a continuance to obtain counsel.

*Rooney,* in turn, cited *Surety Insurance,* apparently approving the "tantamount stipulation" concept. However, that principle was deemed inapplicable under the facts of *Rooney,* a confession of judgment case, "as defendants [there] were not notified of any date of hearing and were not present at the presentation to the commissioner of plaintiffs' application for entry of the judgment." (10 Cal.3d at p. 360.)

The District Attorney of San Mateo County initiated this section 602 proceeding. Through his deputy, he willingly appeared before Browning, raising no objection when that officer announced he was proceeding under an *Arbuckle* condition and later entered a disposition on that basis. Such conduct, we think, was "tantamount to a stipulation" that Browning, by virtue of his status as a commissioner, was acting as a temporary judge rather than as a referee.[6]

It follows that Browning's dispositional order had the same force as that of any other juvenile judge. It could not be reheard in the juvenile court, and Judge Capaccioli's subsequent order on rehearing is therefore

---

[6]Respondent notes that in both minute orders signed by Browning (one for adjudication and one for disposition) he took some care to designate himself a "Referee" rather than a judge. The printed-form orders also recited that he was "report[ing]" his actions to the presiding juvenile judge. (See § 248.) On the other hand, neither party has supplied any evidence that Mark received the required written explanation of his right to seek rehearing of a referee's orders. (*Ibid.*) The uncontroverted declaration of Paul G. Sloan, Mark's counsel throughout, states that "[a]t no time was there any suggestion made by anyone that Judge Browning's disposition would not be binding on *all* parties." (Italics added.)

Under the "tantamount stipulation" doctrine, the parties confer judicial power not because they thought in those terms; had they done so, the stipulation presumably would be express. Rather, an *implied* stipulation arises from the parties' common intent that the subordinate officer hearing their case do things which, *in fact,* can only be done by a judge. Any understandable confusion in this record about Browning's technical status as a referee or temporary judge was insufficient to warn Mark that the *Arbuckle* condition intended by all parties was illusory.

void. In effect, Browning's order was never superseded; it stands as the juvenile court's last determination of Mark's status.[7]

A word of caution is in order. We do not hold that every bargained plea entered before a juvenile referee is subject to *Arbuckle*. As we have seen, the rules may preclude the recognition of "implied" or "tantamount" stipulations conferring final dispositional authority on noncommissioner referees. (*Ante,* fn. 5.) In any event, the referee may state on the record that his judicial status is subordinate and that he has no power to make a binding disposition. If he does so, no inference of temporary judgeship can arise, and no reasonable reliance on an *Arbuckle* condition can be found.

Contrary circumstances exist in this case, however, and we have decided it accordingly. Our conclusion that an enforceable *Arbuckle* bargain arose makes it unnecessary to consider Mark's remaining contentions.

4. *Conclusions.*

Our November 24 order released Mark to his parents' custody, pending determination of the habeas petition, "under the terms and conditions" specified by Commissioner Browning. As originally imposed, those terms and conditions were to be effective for a maximum of 90 days, with a further evaluation at the end of that period.[8] If Mark has complied with them since November 24, the 90-day period has expired. We do not know whether Mark has participated in the Placement Intervention Program during that period.

In any event, we do not seek to prevent the juvenile court from making any new orders consistent with Commissioner Browning's disposition of

---

[7]Our analysis is consistent with the rule that breach of an *Arbuckle* condition entitles the minor to be resentenced by the original judge unless court procedures make that "impossible." (22 Cal.3d at p. 757.) Mark, of course, *was* "sentenced" by the judge who took the plea; another judge simply purported to vacate that order and enter a different disposition. The obvious solution is to reinstate the first, proper dispositional order.

Respondent suggests that Browning rendered no "final" disposition in any event, since the referral to the Placement Intervention Program was subject to review in 90 days. But all dispositions are expressly subject to the "further order of the court" in its continuing jurisdiction over the minor, its ward. (§ 727, subd. (a).) Such final dispositions subject to "further order" are distinguishable from the temporary YA diagnostic commitment, which is intended only to produce a recommendation on future treatment. (§ 704.) In any event, the flaw here is Judge Capaccioli's usurpation of Browning's dispositional authority, which the parties intended as *exclusive*.

[8]At the October 22 hearing, it was agreed that further disposition would be continued until January 21, 1983, and would be by "nonappearance." We take this to mean that, unless Mark's progress under the October 22 probation conditions was unsatisfactory, they would simply be continued, or normal probation would commence.

October 22. Mark remains a court ward, and he is not entitled to complete release.

Under the circumstances, we direct respondent, the probation officer of San Mateo County, to comply with the disposition order made by Commissioner Browning on October 22, 1982, and any further orders of the juvenile court consistent therewith. In all other respects, the order to show cause is discharged and the petition for writ of habeas corpus denied. (Cf., *In re Davis* (1979) 25 Cal.3d 384, 397 [158 Cal.Rptr. 384, 599 P.2d 690].)

Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.

**BIRD, C. J.,** Dissenting—I write separately because I cannot follow the logic of the majority opinion. The court appears to be saying the following: Mr. Browning had no legal power without a prior stipulation from the parties to start the juvenile hearing in his capacity as a commissioner. However, he did have the authority to act as a referee, but any hearing held by him in that capacity would not result in a final dispositional order since (1) the parties did not stipulate in writing that he could act as a judge and (2) an "implied stipulation" is not permitted under the Rules of Court if the judicial officer is a referee. (See maj. opn., *ante,* fns. 4 & 5. See also Cal. Rules of Court, rules 1316(b) & 244(a).)

So, in order to give finality to Mr. Browning's acts, the majority appear to hold that he had jurisdiction to begin the juvenile court proceedings only because he was a *referee;* however, his acts thereafter became the acts of a pro tem. judge. Why? Because he was a commissioner! The majority rely on Browning's status as a *commissioner* to hold that the parties, by failing to object to his participation, allow the legal inference to be drawn that the judicial orders he made at the hearing were those of a pro tem. judge and were therefore final forthwith.[1] Pray tell, was Mr. Browning (1) a referee, (2) a commissioner, (3) a judge pro tem., (4) all three of the above, (5) none of the above, or (6) each of the above depending on when in the course of the hearing you view his actions? The moral of this story for counsel— beware of commissioners in referees' clothing!

---

[1] According to the majority, a commissioner, unlike a referee, can become a pro tem. judge by an "implied stipulation" of the parties—i.e., by their voluntary participation without objection to his presiding.

Since I cannot follow the logic of the opinion, I cannot affix my signature to it. I respectfully dissent.

Respondent's petition for a rehearing was denied August 25, 1983, and the opinion was modified to read as printed above. Bird, C. J., was of the opinion that the petition should be granted.