[No. A041221. First Dist., Div. Three. Jan. 20, 1989.]

In re P. I., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
P. I., Defendant and Appellant.

COUNSEL

Ande Thomas for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WHITE, P. J.**—P. I. appeals after the juvenile court referee sustained a supplemental Welfare and Institutions Code section 602 petition and committed him to the California Youth Authority.[1] P. I. contends: (1) the referee's order sustaining the petition is not supported by substantial evidence; and (2) the referee lacked authority to conduct the dispositional phase of the hearing. We affirm.

### FACTS

P. I. was charged in the supplemental section 602 petition with assault with a firearm and enhancements for firearm use and infliction of great bodily injury. (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subd. (a), 12022.7.) The victim of the assault—Roderick Jackson—told the responding officer that P. I. had shot him. However, Jackson later recanted his statements and refused to implicate P. I. at the jurisdictional hearing.

Jackson testified that he was standing outside of his house at about 12:30 p.m. when three Black men drove by in a car, and one of the men shot him in the leg. Jackson was unable to describe the three men or the car. He denied that P. I. was involved in the shooting or that he had made any statements implicating P. I. Jackson had known P. I. for 15 or 16 years and considered him a "good friend."

Officer Paul Perez testified that he responded to the scene of the shooting. There he found Jackson lying on the ground at the curbside with a gunshot wound in his leg. As Officer Perez approached him, Jackson said "That mother-fucker [P. I.] shot me for no reason, man. The mother-fucker shot me." Officer Perez questioned Jackson at the hospital while he was waiting to see the doctor. Jackson told Officer Perez that P. I. had arrived at his home in a beige-over-light-beige Oldsmobile. P. I. got out of the car and began arguing with Jackson about money Jackson owed P. I. Eventually, P. I. took a gun from his waistband, shot Jackson once in the leg, fired two more shots into the trunk of Jackson's car, and then left in the Oldsmobile

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

which was driven by a Black woman. After he obtained this statement, Officer Perez dispatched a description of the escape vehicle over the police radio.

Detective Clark was on patrol in North Richmond when he heard the broadcast description. Shortly afterward he spotted a beige-over-beige Oldsmobile driven by a Black woman with a Black male passenger. The car stopped, and as the detective approached, the Black male got out and ran across a dirt lot. Detective Clark was "80 percent" certain that P. I. was the person who ran from the car.

Finally, Jackson's sister testified she was inside her home when she heard two gunshots. She looked outside and saw P. I. standing over her brother who was on the ground holding his leg. She then saw P. I. leave in a beige or "goldish-like color" Oldsmobile.

DISCUSSION

A. *Substantial Evidence.*

P. I. first contends the evidence is insufficient to support the referee's finding that he committed the assault with a deadly weapon. We disagree.

In ruling on a substantial evidence challenge, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The record contains such evidence.

We note first that the inconsistent statements Jackson made prior to the hearing were admissible not only to impeach him, but also to prove the truth of the facts asserted in those statements. (Evid. Code, § 1235; *People* v. *Green* (1971) 3 Cal.3d 981, 985 [92 Cal.Rptr. 494, 479 P.2d 998]; *People* v. *Brown* (1984) 150 Cal.App.3d 968, 972 [198 Cal.Rptr. 260].) Consequently, Jackson's statements to Perez that P. I. had shot him and then drove off in a beige-over-beige Oldsmobile were admissible to prove the truth of those facts. Moreover, this evidence was bolstered by the independent testimony of Jackson's sister who saw P. I. standing over her brother, and Officer Clark, who saw P. I. (or a person he believed was P. I.) flee from a car matching the description of the getaway vehicle. In our view, the referee's finding is unquestionably supported by substantial evidence.

In support of his argument P. I. cites a line of cases which holds that "[a]n extrajudicial identification that cannot be confirmed by an iden-tification at the trial is insufficient to sustain a conviction *in the absence of other evidence tending to connect the defendant with the crime.*" (*People* v. *Gould* (1960) 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865], italics added; see also *In re Miguel L.* (1982) 32 Cal.3d 100, 105 [185 Cal.Rptr. 120, 649 P.2d 703]; *In re Johnny G.* (1979) 25 Cal.3d 543, 547 [159 Cal.Rptr. 180, 601 P.2d 196]; *People* v. *Belton* (1979) 23 Cal.3d 516, 535 [153 Cal.Rptr. 195, 591 P.2d 485] (conc. opn. of Jefferson, J.).) The short answer to this contention is that here, unlike in the cases cited, there is "other" evidence tending to connect the defendant with the crime: spe-cifically, the testimony of Jackson's sister and Detective Clark. Moreover, in three of the four cases P. I. has cited on this point, the court was concerned not only with the lack of other supporting evidence, but also with the particular untrustworthiness of the extrajudicial identifications themselves. (*People* v. *Gould, supra,* 54 Cal.2d at p. 631 [untrustworthy photo lineup]; *People* v. *Belton, supra,* 23 Cal.3d at pp. 536-537 [accomplice testimony]; *In re Miguel L., supra,* 32 Cal.3d at p. 109 [statements given in exchange for immunity].) By contrast, in the present case there is every reason to believe that Jackson's prior statements implicating P. I. are trustworthy. They were made spontaneously shortly after the shooting occurred, were reconfirmed at the hospital, and were never disavowed by Jackson before the hearing. In fact, given Jackson's admitted friendship with P. I., his spontaneous state-ments in the heat of anger are probably much more reliable than his testi-mony at the hearing.

The referee's finding is supported by substantial evidence.

B.  *Referee's Authority to Act as Temporary Judge at the Dispositional Hearing.*

■ P. I. next contends he did not agree to allow the juvenile court referee to act as a temporary judge at the dispositional hearing, and that the referee consequently lacked authority to commit him to CYA without judi-cial approval. (§ 249.).[2] We reject this argument.

Prior to the jurisdictional hearing, P. I.'s attorney signed a stipulation permitting Steven Easton to sit as a temporary judge in the case. Spe-cifically, the stipulation provided: "IT IS HEREBY STIPULATED by the par-ties hereto that the [ ] action may be tried by the Honorable Referee Steven Easton as judge pro tempore and that his judgment of acquittal or guilt shall be binding on the parties . . . . [¶] IT IS FURTHER STIPULATED by the undersigned parties that the above-named minor understands and

---

[2] Section 249 provides: "No order of a referee removing a minor from his home shall be-come effective until expressly approved by a judge of the juvenile court."

waives the right to have a jurisdictional hearing conducted by the Superior Court Juvenile Judge." The referee presided at both the jurisdictional and dispositional phases of the case. Neither P. I. nor his attorney objected to the referee presiding at the dispositional hearing. Nevertheless, P. I. now contends the stipulation only waived his right to have a superior court judge preside at the jurisdictional hearing, and that he did not agree to have the referee act as a temporary judge at the disposition.

In general, a juvenile court referee is constitutionally limited to the performance of "subordinate judicial duties." (Cal. Const., art. VI, § 22; *In re Edgar M.* (1975) 14 Cal.3d 727, 732 [122 Cal.Rptr. 574, 537 P.2d 406].) Consequently, *absent a stipulation conferring judicial power,* a juvenile court referee does not have authority under the California Constitution to conduct a jurisdictional or dispositional hearing. (*In re Perrone C.* (1979) 26 Cal.3d 49, 57 [160 Cal.Rptr. 704, 603 P.2d 1300]; *In re Edgar M., supra,* 14 Cal.3d at p. 735.)

In the present case, however, the referee was in fact acting as a temporary judge, not as a referee. The State Constitution provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (Cal. Const., art. VI, § 21.) Thus, the parties can by agreement confer full judicial powers on the referee. (*In re Edgar M., supra,* 14 Cal.3d at p. 732.)

Nevertheless, P. I. contends the stipulation made the referee a temporary judge with respect to the jurisdictional phase of the hearing only. Once that phase ended, P. I. argues, the referee had no authority to sit as a temporary judge at the dispositional hearing. We disagree.

Even if we assume the written stipulation is ambiguous concerning the parties' intent to have the referee act as a temporary judge at the dispositional hearing, we may nevertheless affirm the dispositional order because the conduct of P. I. and his attorney at the dispositional hearing strongly suggests the parties intended that the referee act as a temporary judge at that proceeding. We find support for this position in *In re Mark L.* (1983) 34 Cal.3d 171 [193 Cal.Rptr. 165, 666 P.2d 22]. There, the Supreme Court acknowledged that "several cases recognize that voluntary participation before a subordinate officer . . . may amount to an agreement that he acted as a temporary judge." (*Id.* at p. 178, fn. omitted, citing *Estate of Soforenko* (1968) 260 Cal.App.2d 765 [67 Cal.Rptr. 563] and *People* v. *Oaxaca* (1974) 39 Cal.App.3d 153 [114 Cal.Rptr. 178].)

We are aware that in *Mark L.* the Supreme Court cautioned this rule may not be applicable to juvenile court referees (as opposed to court commissioners) because the stipulation making a court referee a temporary judge

must be " 'in writing.' " (*In re Mark L., supra,* 34 Cal.3d at p. 178, fn. 5; Cal. Rules of Court, rule 244.) Here, however, the stipulation *was* in writing and we are merely relying on the rule to determine the scope of judicial power the parties intended to confer on the referee. Moreover, in *In re Robert S.* (1988) 197 Cal.App.3d 1260 [243 Cal.Rptr. 459] the court partially answered the question left open in *Mark. L.* by concluding that compliance with the " 'in writing' " requirement is not a prerequisite to the court's jurisdiction. (*Id.* at p. 1265.) The *Robert S.* court held that the defendants in that case waived any objection to the " 'in writing' " requirement by failing to object and by expressly consenting to the proceeding. (*Ibid.*)

Similarly, in the present case P. I. and his attorney did not object to and in fact fully participated in the dispositional hearing before the referee. We agree with the *Oaxaca* and *Robert S.* courts that " ' "It would seem . . . intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." ' " (*People* v. *Oaxaca, supra,* 39 Cal.App.3d at p. 164; see also *In re Robert S., supra,* 197 Cal.App.3d at p. 1265.) In our view, the conduct of P. I. and his attorney at the dispositional hearing indicates they understood the referee was empowered to act as a judge pro tempore at that proceeding; moreover, to the extent this agreement was not made clear in writing as required by rule 244, P. I. waived any objection on this basis by not objecting to and in fact fully participating in the dispositional hearing before the referee (*In re Robert S., supra,* 197 Cal.App.3d at p. 1265).

The judgment is affirmed.

Merrill, J., and Strankman, J., concurred.