[No. D009166. Fourth Dist., Div. One. May 18, 1990.]

In re LAMONICA H., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Petitioner and Respondent, v.
HERMAN H., Objector and Appellant.

**COUNSEL**

Nancy A. Dorner, under appointment by the Court of Appeal, for Objector and Appellant.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Patricia L. Davis, Deputy District Attorneys, for Petitioner and Respondent.

Winifred Chernoff for Minor.

**OPINION**

**BENKE, J.—**

## INTRODUCTION

Referees are empowered to conduct dependency proceedings under Welfare and Institutions Code,[1] section 300, without stipulation or other approval of the parties, when the proceedings are in accordance with section 248, which provides a right for rehearing before the superior court. When a referee conducts the hearing not as a referee, but as a "temporary judge," the rehearing right does not pertain. Service as a "temporary judge," however, must be based upon the written stipulation of the parties. (Art. VI, § 21 of the Cal. Const.; rule 244 of the Cal. Rules of Court.[2]) Here we conclude the requirement of a written stipulation is directory rather than jurisdictional and further that knowing participation in the proceedings before a referee acting as a temporary judge will be deemed tantamount to a stipulation.

## SUMMARY

On July 30, 1988, Kathy H. took her 10-year-old daughter Gloria W. to Sharp Hospital. Kathy thought her husband Herman had sexually molested

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] All rule references are to the California Rules of Court unless otherwise specified.

Gloria. Kathy reported finding a white substance coming from Gloria's vagina. Gloria herself reported that on the previous evening Herman had orally and digitally copulated her.

Because Kathy did not obey police instructions to keep Herman out of her home, on August 3, 1988, Gloria and her stepbrother Kenneth C. and her stepsisters Shannon C. and Lamonica H. were taken to Hillcrest Receiving Home.

On August 5, 1988, the San Diego County Department of Social Services (Department) filed petitions, alleging the four children came within the provisions of section 300, subdivision (d).

A contested jurisdictional hearing was conducted on September 19, 1988, before Michael J. Imhoff, a referee. After listening to testimony from Kathy and Gloria and considering the other evidence presented, the referee found by clear and convincing evidence that the four children were persons described by section 300, subdivision (d). The referee continued dispositional hearings on the children and indicated the parents would be given notice of their appellate rights at those hearings.

The dispositional hearings were conducted on October 14, 1988, before another referee, Yuri Hoffman. Among other matters the referee ordered that both parents comply with reunification plans proposed by the Department and submit to psychological evaluations. The parents were further ordered to release to the Department the results of their psychological evaluations and counseling.

Later on October 14, 1988, Herman filed an application for a rehearing of the matters heard by the referees. Citing *In re Heather P.* (1988) 203 Cal.App.3d 1214 [250 Cal.Rptr. 468], his application for a rehearing stated "I did not sign an agreement to allow the referee or temporary judge to hear the case." His application for a rehearing was summarily denied on October 17, 1988.

Herman filed a timely notice of appeal.

### ISSUES ON APPEAL

On appeal Herman argues that because no written stipulation meeting the requirements of rule 244 was obtained, the referees had no power to determine jurisdiction under section 300, subdivision (d), or to otherwise make a disposition of his rights. Herman also argues he did not receive adequate notice of his right to a rehearing before a superior court judge. Finally,

Herman asserts the trial court had no power to order him to disclose to the Department information about his psychological counseling.

We find no merit in Herman's arguments and affirm.

DISCUSSION

I

*Rule 244 Is Not Jurisdictional*

A. The Requirements of Rule 244 Are Directory, Not Mandatory

Article VI, section 21 of the California Constitution provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." Rule 244 in turn provides: "The stipulation of the parties litigant that a case may be tried by a temporary judge shall be in writing and shall state the name and office address of the member of the State Bar agreed upon. It shall be submitted for approval to the presiding judge, or to the supervising judge of a branch court. The order designating the temporary judge shall be endorsed upon the stipulation, which shall then be filed. The temporary judge shall take and subscribe the oath of office, which shall be attached to the stipulation and order of designation, and the case shall then be assigned to the temporary judge for trial. After the oath is filed, the temporary judge may proceed with the hearing, trial, and determination of the case.

"A filed oath and order, until revoked, may be used in any case in which the parties stipulate to the designated temporary judge. The stipulation shall specify the filing date of the oath and order.

"This rule does not apply to the selection of a court commissioner to act as a temporary judge."

In this case no written stipulation permitting the referees to act as temporary judges was ever obtained. Herman's principal argument on appeal is that this error invalidates the proceedings conducted before the referees. Herman relies principally on the holding in *In re Heather P., supra,* 203 Cal.App.3d at page 1225: "In this case, the record reveals only an oral stipulation by counsel for the welfare department (apparently also acting in the minor's behalf) and for the mother that the attorney could sit as a temporary judge 'because a regular judge was not available.' The record is devoid of any indication of compliance with the requirement of the filing of

a written stipulation that the attorney could act as a temporary judge during the disposition hearing, approval of the stipulation by the presiding judge, or with the requirement that the temporary judge take the oath of office. Under these circumstances, the orders of the temporary judge were null and void." The court in *Heather* relied on an earlier one of its own decisions, *In re Damian V.* (1988) 197 Cal.App.3d 933 [243 Cal.Rptr. 185], which found that rule 244 "is couched in mandatory language and suggests failure to comply with the specific conditions precedent would nullify or void any subsequent rulings or orders by the temporary judge." (*Id.* at p. 938.)

*In re Heather P., supra,* 203 Cal.App.3d 1214, and *In re Damian V., supra,* 197 Cal.App.3d 933, directly conflict with the holding in *In re Robert S.* (1988) 197 Cal.App.3d 1260, 1264 [243 Cal.Rptr. 459]: "Despite the existence of an express stipulation on the record, defendants would have us elevate the method for memorializing a stipulation set forth in rule 244(a) to the level of a constitutional prerequisite to clothing an attorney selected under that rule with the powers of a temporary judge. We decline to do so. [¶]In reaching our conclusion that the failure to comply with rule 244(a) does not void the judgment, we rely, in the first instance, on the plain language of article VI, section 21, of the California Constitution, which requires only that there be a 'stipulation of the parties litigant.' The cases interpreting the constitutional provision have rejected any requirement that the stipulation be express. [Citations.] If a valid stipulation may be implied from conduct, then, a fortiori, an *express,* albeit oral, stipulation to a hearing by a retired juvenile court referee acting as a judge pro tempore such as the one put on record in this case is sufficient to satisfy the constitutional requirements of article VI, section 21." (Fn. omitted.) (See also *In re P. I.* (1989) 207 Cal.App.3d 316, 322 [254 Cal.Rptr. 774]; *In re James G.* (1990) 219 Cal.App.3d 1202 [268 Cal.Rptr. 675] review granted Aug. 23, 1990 (S016002).)

In excusing the absence of a written stipulation the court in *In re Robert S., supra,* 197 Cal.App.3d 1260, adopted the rationale set forth in an earlier case, *People v. Oaxaca* (1974) 39 Cal.App.3d 153 [114 Cal.Rptr. 178], where a defendant argued that a written stipulation was necessary to validate proceedings before a court commissioner. In *Oaxaca* the court found that it would be " ' "intolerable to permit a party to play fast and loose with the administration of justice by deliberately standing by without making an objection of which he is aware and thereby permitting the proceedings to go to a conclusion which he may acquiesce in, if favorable, and which he may avoid, if not." ' " (*Id.* at p. 164.) The holding in *Oaxaca* itself was later cited with approval by the Supreme Court in *In re Mark L.* (1983) 34 Cal.3d 171, 178 [193 Cal.Rptr. 165, 666 P.2d 22].

With due respect to the court which decided *In re Heather P., supra,* 203 Cal.App.3d 1214, and *In re Damian V., supra,* 197 Cal.App.3d 933, we find the holding and rationale of *In re Robert S., supra,* 197 Cal.App.3d 1260, more persuasive. Our principal point of departure from *Heather* and *Damian* is the assumption in those cases that use of the word "shall" in rule 244 was intended to void any action taken when the requirements of the rule have not been met. In interpreting "shall" our Supreme Court has consistently rejected any such assumption. (See *People* v. *McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382]; *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606]; *Averill* v. *Lincoln* (1944) 24 Cal.2d 761, 764 [151 P.2d 119]; *Phillips* v. *Barron* (1958) 158 Cal.App.2d 316, 319 [322 P.2d 506].)

In *People* v. *McGee, supra,* 19 Cal.3d 948, the court was asked to interpret section 11483 which prescribes criminal penalties for those who fraudulently obtain welfare benefits under the aid to families with dependent children (AFDC) program. At the time *McGee* was decided, section 11483 provided in part: "All actions necessary to secure restitution *shall* be brought against persons in violation of this section as provided in Sections 12250 and 12850." (Italics added.) In considering the defendant's argument that failure to seek restitution prevented a later prosecution, the court explained in detail the need to look beyond a statute's use of the word "shall": "[W]e undertake at the outset to clarify some confusion in terminology that has frequently inhibited analysis of similar questions of statutory interpretation in the past. Traditionally, the question of whether a public official's failure to comply with a statutory procedure should have the effect of invalidating a subsequent governmental action has been characterized as a question of whether the statute should be accorded 'mandatory' or 'directory' effect. If the failure is determined to have an invalidating effect, the statute is said to be mandatory; if the failure is determined not to invalidate subsequent action, the statute is said to be directory. As we explain below, in evaluating whether a provision is to be accorded mandatory or directory effect, courts look to the purpose of the procedural requirement to determine whether invalidation is necessary to promote the statutory design. [¶] Although the parties to this action have utilized the mandatory-directory terminology in their briefs, both parties, sharing the confusion exhibited in some past judicial decisions, have improperly equated the mandatory-directory duality with the linguistically similar, but analytically distinct, 'mandatory-permissive' dichotomy." (*People* v. *McGee, supra,* 19 Cal.3d at p. 958.)

In the mandatory-permissive dichotomy "the term 'mandatory' refers to an obligatory [procedure] which a governmental entity is required to [follow], as opposed to a permissive [procedure] which a governmental entity

may [follow] or not as it chooses. By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. [Citations.]" (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 908, fn. omitted.)[3]

■ There is no mechanical test for determining whether a provision should be given "mandatory" or "directory" effect. (*Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 909.) Rather, " '[i]n order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] *When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose* [citation]. . . .' " (*Id.* at p. 910, quoting *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262 [175 P.2d 1], fn. omitted, italics added.)

Neither *In re Damian V., supra,* 197 Cal.App.3d 933, nor *In re Heather P., supra,* 203 Cal.App.3d 1214, provides analysis of the intent of the drafters of rule 244. Rather, the court in *Damian* merely concluded that because the drafters used the term "shall," they must have intended the rule to have mandatory rather than directory effect. (*In re Damian V., supra,* 197 Cal.App.3d at p. 938.) In reaching its conclusion that proceedings before an attorney are void in the absence of a written stipulation, the court in *Heather* simply relied on its earlier holding in *Damian.* (*In re Heather P., supra,* 203 Cal.App.3d at p. 1225.) As the court in *People* v. *McGee, supra,* 19 Cal.3d 948, made plain, use of "shall" in rule 244 should be the beginning of our analysis rather than the end.

■ The use of "shall" in rule 244 is of course significant in determining whether the procedure set forth in the rule is obligatory or permissive. Rule 249(c) provides in pertinent part: "In these rules, unless the context or

---

[3] "Although the mandatory-directory and obligatory-permissive dichotomies are thus analytically distinct, in some instances there is an obvious relationship between the two. If, for example, a statute simply embodies a permissive procedure with which a governmental entity may or may not comply as it chooses, the entity's failure to comply will generally not invalidate the entity's subsequent action. The converse of this proposition is not always true, however, for as we observed in *Morris,* '[m]any statutory provisions which are "mandatory" in the obligatory sense are accorded only "directory" effect.' " (*People* v. *McGee, supra,* 19 Cal.3d at p. 959.)

subject matter otherwise requires: . . . [¶] (2) The word 'shall' is mandatory and the word 'may' is permissive."[4] We have little doubt that the provisions of rule 249(c) are sufficient to establish that rule 244 sets forth an obligatory rather than permissive procedure. (See *Averill* v. *Lincoln, supra,* 24 Cal.2d at p. 764; *Phillips* v. *Barron, supra,* 158 Cal.App.2d at p. 319.) However rule 249(c) is of little assistance in determining how we must treat a violation of the rule. As the court in *Averill* explained in interpreting the identical definition as it appears in rule 40(d), "The declaration that 'shall' is mandatory merely states a required act and means that the particular provision does not permit of alternative or permissive procedures. The party who fails to perform an act which the rules declare 'shall' be performed is acting in violation of the rules. *It does not follow, however, that such violation is jurisdictional.*" (*Averill* v. *Lincoln, supra,* 24 Cal.2d at p. 764, italics added.)

Aside from use of the word "shall," there is nothing on the face of rule 244 to guide us in determining its effect. ■ Nonetheless we note, as did the court in *In re Robert S., supra,* 197 Cal.App.3d at page 1265, that until 1966 the constitutional provision which permitted referees to act as temporary judges also provided that they "*shall also be subject to such regulations and orders as may be prescribed by the Judicial Council.*" (Former art. VI, § 5 of the Cal. Const., italics added.) When new article VI, section 21 was adopted in 1966 this reference to the regulations and orders of the Judicial Council was eliminated. Like the court in *Robert* we believe this omission supports the inference that "compliance with rule 244(a) is not a constitutional prerequisite to empowering a temporary judge to act." (197 Cal.App.3d at p. 1265.)

More significant, however, than elimination of any reference in the Constitution to the regulations of the Judicial Council, is consideration of whose interests are protected by rule 244. With respect to the mandatory-directory dichotomy " ' "the construction of particular provisions must be left for determination in such light as the obvious purpose they were intended to accomplish may afford. . . . No one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers . . . which in no way concern himself, and make them the excuse for a failure on his part to perform his own duty. On the other hand, he ought always to be at liberty to insist that directions which the law has given to its officers *for his benefit* shall be observed." ' (Italics added.)

". . . . 'There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which

---

[4] See also rules 40(d), 922(g); Welfare and Institutions Code section 15; Financial Code section 15; Government Code section 14; Public Resources Code section 15; Vehicle Code section 15.

do not limit their power or render its exercise in disregard of the requisitions ineffective. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory. . . . But when the requisitions prescribed are intended for the protection of the citizen, . . . and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid . . . .' " (*People* v. *McGee, supra,* 19 Cal.3d at pp. 962-963, fn. omitted.) Thus the pertinent question we must resolve is whether rule 244 was intended to protect Herman's rights or "was instead simply designed to serve some collateral, administrative purpose." (*Id.* at p. 963.)

 Where a party to a proceeding heard by a referee has in fact expressly or impliedly agreed that the referee may sit as temporary judge pursuant to article VI, section 21 of the Constitution, it is difficult for us to fathom what legitimate interest the party has in the method by which his agreement is memorialized. Whether consent is oral, written, express or implied, if in fact a party agrees to proceed before a referee and thereafter receives a ruling on the merits from the referee, his reasonable expectations have been fulfilled. Thus the detailed procedure set forth in rule 244 appears to us designed to serve collateral interests of the judicial system. By requiring a written instrument, the rule prevents disputes as to whether parties have in fact consented and the scope of their consent. (See, e.g., *In re P. I., supra,* 207 Cal.App.3d at p. 322.) By further requiring the written approval of a supervising judge and an oath, the rule insures that the activities of temporary judges are monitored and do not impair the administration of the trial courts. These interests are entirely unrelated to Herman's interest in having his dispute heard in a competent and unbiased tribunal.

Our conclusion rule 244 serves strictly administrative purposes is buttressed by consideration of the duties referees may discharge in juvenile proceedings under section 300 when they are *not* sitting as temporary judges. Section 248 states: "A referee shall hear such cases as are assigned to him or her by the presiding judge of the juvenile court, with the same powers as a judge of the juvenile court, except that a referee shall not conduct any hearing to which the state or federal constitutional prohibitions against double jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the capacity of a temporary judge."[5]

---

[5] Because civil dependency proceedings under section 300 are designed not to prosecute the parents but to protect the child, generally the double jeopardy prohibitions of the state and federal Constitutions have no application. (See *In re Mary S.* (1986) 186 Cal.App.3d 414, 418 [230 Cal.Rptr. 726].) On the other hand, proceedings under section 602 do involve double

When a section 300 proceeding is heard before a juvenile court referee, the referee's decision is subject to rehearing upon timely application of a minor or his parents or by the superior court on its own motion. (§§ 252, 253.) Notice of the right to review by a superior court judge must be given to the minor and his parents orally at any hearing conducted by a referee and in writing. (Rule 1416(a), (b).)

Thus even when a parent or child is unwilling to stipulate a referee may act as a temporary judge, the referee may nonetheless conduct juvenile proceedings under section 300. The stipulation is not necessary to empower a referee; it is only necessary to give his acts finality. In our view, it would be illogical to hold that even though a stipulation is not necessary for a referee to act, the failure to obtain one in writing deprived him of jurisdiction.

In sum, then, we find the failure to meet the requirements of rule 244 did not in and of itself prevent the referees from acting in this matter. The absence of a writing did not threaten Herman's rights. Under the dictates of *People* v. *McGee, supra,* 19 Cal.3d 948, the requirements of rule 244, while obligatory, may be given only directory effect.[6]

B. Herman's Conduct Supports an Implied Stipulation

■ Because there is no written stipulation as required by the rule, we must engage in the very task which the rule, if followed, would have obviated: a search in the record for an agreement by the parties that the referees could sit as temporary judges. As we have seen, if there was no stipulation the jurisdictional and dispositional orders were subject to de novo review by the superior court.

The parties agree no express stipulation is in the record. Rather the Department argues such an agreement may be implied from the conduct of the parties. In this regard the Department relies upon the holding in *Mark* in which the Supreme Court found that an agreement that a commissioner would sit as a temporary judge could be implied from the conduct of the

jeopardy and require a stipulation. (See *Jesse W.* v. *Superior Court* (1979) 26 Cal.3d 41, 57 [160 Cal.Rptr. 700, 603 P.2d 1296].)

 [6] We recognize that in *In re Mark L., supra,* 34 Cal.3d 171, 178, footnote 5, the Supreme Court noted rule 244 and stated that, in light of the rule's requirements, "In the usual case . . . it *may* not be possible to vest a referee with full judicial power merely by participating before him." (Italics added.) However, the Supreme Court also noted that a commissioner had entered the disputed order and by its terms rule 244 does not apply to commissioners. (*Ibid.*) Thus the court in *Mark* did not consider or decide the question we face: whether rule 244 should be given mandatory or directory effect. (See *In re Robert S., supra,* 197 Cal.App.3d at pp. 1263-1264.)

parties during the course of the proceedings. (*In re Mark L., supra*, 34 Cal.3d at pp. 178-179.) "[S]everal cases recognize that voluntary participation before a subordinate officer who lacks authority in that capacity may amount to an agreement that he acted as a temporary judge." (*Id.* at p. 178.)

In *In re Mark L., supra*, 34 Cal.3d 171, a juvenile offender entered a negotiated plea of no contest to a burglary before a court commissioner sitting as a juvenile court referee. At the time of the plea the commissioner advised the minor that he had the right to have "the same judicial officer" who took the plea handle the disposition. Thereafter the commissioner declared the juvenile a ward of the court and released him to his parents. Later a superior court judge acting on his own motion granted a rehearing in the matter and ordered the minor committed to the California Youth Authority for 90 days. On the minor's petition for a writ of habeas corpus the Supreme Court found that the parties had entered a "tantamount stipulation" that the commissioner would act as a temporary judge. Thus the court held the superior court had no power to rehear the minor's disposition.

In finding a "tantamount stipulation" the court relied on the commissioner's statement the minor had the right to have the same judicial officer handle his disposition. The court found the commissioner's statement was a reference to *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171], and that the People's failure to object at the time the *Arbuckle* admonition was given was tantamount to a stipulation the commissioner was acting as a temporary judge. In rejecting the respondent's argument that minute orders in which the commissioner identified himself as a "referee" should be given conclusive effect, the court explained the nature of a "tantamount stipulation": "Respondent notes that in both minute orders signed by [the commissioner] (one for adjudication and one for disposition) he took some care to designate himself a 'Referee' rather than a judge. The printed-form orders also recited that he was 're-port[ing]' his actions to the presiding juvenile judge. (See § 248.) On the other hand, neither party has supplied any evidence that Mark received the required written explanation of his right to seek rehearing of a referee's orders. (*Ibid.*) The uncontroverted declaration of Paul G. Sloan, Mark's counsel throughout, states that '[a]t no time was there any suggestion made by anyone that [the commissioner's] disposition would not be binding on *all* parties.' (Italics added.) [¶] Under the 'tantamount stipulation' doctrine, the parties confer judicial power not because they thought in those terms; had they done so, the stipulation presumably would be express. Rather, an *implied* stipulation arises from the parties' common intent that the subordinate officer hearing their case do things which, *in fact,* can only be done by a

judge. Any understandable confusion in this record about [the commissioner's] technical status as a referee or temporary judge was insufficient to warn Mark that the *Arbuckle* condition intended by all parties was illusory." (*In re Mark L., supra,* 34 Cal.3d at p. 179, fn. 6.)

Contrary to the Department's argument, the decision in *Mark* does not permit us to find a tantamount stipulation simply because Herman proceeded without objection in the jurisdictional and dispositional hearings. In proceedings under section 300 the absence of an objection to a referee is consistent not only with an understanding that the referee is acting as a temporary judge, but also with a belief the referee is acting as a referee whose decisions will be subject to rehearing before a superior court judge. (See rules 1416-1418.) Rather as we read *Mark* the absence of an objection will give rise to a tantamount stipulation *when a referee exercises some power which is vested only in temporary judges.*

Here we believe there are such instances, where, without objection, the referees took steps which were proper only if the parties understood the referees were acting as temporary judges. In particular we note rule 1416(a)[7] which provides in pertinent part: "Juvenile court proceedings heard by a referee shall be conducted in the same manner as juvenile court proceedings heard by a judge, except: . . . [¶] (2) Prior to the conclusion of the hearing, in addition to any other information or advice to the child and parent or guardian required elsewhere in these rules, the referee shall inform the child and parent or guardian that the hearing is being held before a referee and not a judge and *that there is a right to seek review by a juvenile court judge of any order of a referee.*" (Italics added.)

Here the referee at the jurisdictional hearing did not give the notice required by rule 1416(a). Were the referee acting only as a referee and not as a temporary judge, plainly this failure would have been an error. However, if the referee, the parties and their counsel understood the referee was acting as a temporary judge whose orders were not subject to rehearing in the superior court, there was no need to provide the oral notice. In our view the record discloses just such an understanding by the parties. First, the failure to give the notice was not a simple oversight. The record discloses that at the close of the hearing the referee pointedly advised the parties they would receive their "appellate rights" at the disposition hearing. Thus the parties' right to seek review had not escaped the referee's attention. Second, we note that Herman's counsel, counsel for Kathy, counsel for Lamonica and counsel for the Department, all were present when the referee set the disposition date and declined to give the rule 1416(a) notice. As in *Mark,*

---

[7] Formerly rule 1317(a).

we believe their silence reflected a common intent that the referee in the case do things which, in fact, can only be done by a judge. Our conclusion in this regard is supported by the fact that although the disposition date was continued, Herman's counsel told the referee at the close of the jurisdictional hearing his client wanted an immediate disposition. In our view this conduct is not consistent with any reservations on Herman's or his counsel's part as to the referee's competence to fully adjudicate Herman's rights.

Similar evidence the parties understood the referees in this case were acting as temporary judges appears in the transcript of the disposition hearings. Although the referee at the disposition hearing ordered Herman and Kathy to complete a reunification plan, participate in psychological treatment, and, over Herman's objection, release the results of their treatment to the Department, the referee did not give them any of the notices required by rule 1416(a). Again, neither counsel for Herman, Kathy, nor the Department made any objection to the lack of notice. Again, the lack of any regard for the requirements of rule 1416 strongly suggests a mutual understanding that it did not apply to these proceedings.

Finally, we note the rapidity with which Herman filed his request for rehearing in the superior court and the grounds he relied upon. As we have seen, Herman's request was filed on the *day* of the dispositional hearing, October 14, 1988, cited *In re Heather P., supra*, 203 Cal.App.3d 1214, and stated Herman had not "signed an agreement" permitting the referee to hear the case. The timing of the request and its reliance on *Heather* suggest strongly Herman and his counsel knew Herman's consent was necessary for the referee to act as a temporary judge but nonetheless made a conscious decision to remain silent at a time when any error could have been avoided. Indeed, had Herman been unwilling to be bound by the findings of either referee and had he made his feelings known in a timely manner, one of the referees could have made arrangements for the entire matter to be heard by a superior court judge, thus avoiding the necessity for any de novo review at the trial court level. In our view, given Herman's and his counsel's obvious knowledge of Herman's rights, the failure to assert them in a timely manner was tantamount to a stipulation Herman's case could be heard by the referees sitting as temporary judges.

## II

### *Herman's Right to Notice*

Because we have determined the referees were in fact acting as temporary judges, their orders were final and not subject to rehearing by a superior court judge. (*In re Mark L.,̀ supra*, 34 Cal.3d at pp. 179-180; see also *In re*

*Edgar M.* (1975) 14 Cal.3d 727, 734 [122 Cal.Rptr. 574, 537 P.2d 406]; *In re Damon C.* (1976) 16 Cal.3d 493, 496 [128 Cal.Rptr. 172, 546 P.2d 676].) In sum, by knowingly acquiescing in the court's failure to give the rule 1416(a) notice, Herman's counsel provided persuasive proof such notice was not necessary in this case.

## III

### *Herman's Fifth Amendment Rights Were Protected*

■ Herman argues the dispositional order infringes upon his right to be free of self-incrimination because it required him to participate in psychological counseling and to release to the Department the results of such treatment. We reject Herman's argument.

A similar dispositional order was challenged in *In re Jessica B.* (1989) 207 Cal.App.3d 504 [254 Cal.Rptr. 883]. The court in *Jessica* found no Fifth Amendment violation because it held the results of the treatment could not be used against a father in pending criminal proceedings. "The California Constitution requires that a person proceeding simultaneously in the criminal courts for child abuse and the juvenile court regarding a dependency of the abused minor should not only be granted use immunity for his or her testimony at dependency proceedings that constitutes an admission to the acts at issue in the criminal case against him or her but also for such statements made during court-ordered therapy. Under the circumstances of this case, such an immunity is essential to the constitutional privilege against self-incrimination and facilitates the goal of protecting the best interest of the minor and achieving the reunification of the family at the earliest possible date. However, we do not suggest that the immunity bars use of statements made to the therapist if the criminal defendant puts such statements in issue through squarely inconsistent testimony at the criminal trial." (*Id.* at p. 521.)

In reaching this conclusion the court in *In re Jessica B., supra*, 207 Cal.App.3d 504, relied upon the holding in *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], where the Supreme Court held that statements by a minor at a hearing to determine her fitness to be tried as an adult could not be used in a subsequent criminal trial. The court in *Ramona* found such immunity was required by the Constitution because without it the minor would have been placed in the dilemma of either cooperating at the fitness hearing or protecting her right against self-incrimination. (*Id.* at pp. 804-805.)

Like the court in *In re Jessica B., supra*, 207 Cal.App.3d 504, we believe a parent ordered to participate in a reunification plan which includes

psychological treatment and disclosure of that treatment to the Department is placed in a dilemma no less difficult than the one discussed in *Ramona R. v. Superior Court, supra*, 37 Cal.3d 802. As the court in *Jessica* said, "Without immunity [the father] is forced to choose between incriminating himself or having little chance of complete reunification with his daughter." (207 Cal.App.3d at p. 520.) Thus like the court in *Jessica* we find any admissions Herman makes during the course of treatment ordered as part of the reunification plan would be immune from use in criminal proceedings which might be brought against him.[8] Accordingly the dispositional order did not infringe upon his right against self-incrimination.

The juvenile court orders are affirmed.

Todd, Acting P. J., and Froehlich, J., concurred.

---

[8] We note no such proceedings are pending at this time.