Filed 4/14/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of KELLI and MARC DJULUS. | D069757 |
| KELLI MCCLINTOCK, | |
| Respondent, | (Super. Ct. No. ED92245) |
| v. | |
| MARC DJULUS, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Darlene A. White, Commissioner. Reversed.

Marc Djulus, in pro. per., for Appellant.

Kelli McClintock, in pro. per., for Respondent.

The California Constitution provides that parties litigating a cause may stipulate that the matter may be heard and decided by a temporary judge. (Cal. Const., art. VI, § 21.) Our Supreme Court has interpreted this to mean that a stipulation is required to qualify a commissioner to act and that without such a stipulation, any ruling by or

judgment of the commissioner is void. (See *In re Horton* (1991) 54 Cal.3d 82, 90 (*Horton*).) To be valid, the stipulation need not be in writing or be the result of an express oral statement (*id.* at p. 91), but it may be implied as a result of the *conduct* of a party and/or his/her counsel under the "tantamount stipulation doctrine" (*ibid.*). However, in order for there to be an implied stipulation, there must be evidence in the record to show a party and/or his/her counsel "were aware that the judicial officer sitting on the bench was a commissioner rather than a judge" (*id.* at p. 99) and nonetheless participated in the cause.

The instant case is a prime example of the harsh consequences that result when a commissioner neglects, at the *outset* of the cause, to obtain the parties' consent for the commissioner to hear and decide the cause *before* making any substantive rulings. This case is even more troubling because the superior court had available a form, D-204 (rev. 2012) titled "Stipulation for Court Commissioner to Act as Temporary Judge for All Purposes" (D-204 form), that, if signed by the parties and/or their attorneys, gave the commissioner the power to hear and decide the cause. Thus, the tantamount stipulation doctrine should never have been an issue in this case.

Appellant Marc Djulus (Marc), appearing in propria persona as is respondent Kelli McClintock (Kelli), appeals the judgment of dissolution entered in December 2015. Among other contentions, Marc asserts the commissioner lacked jurisdiction to hear and decide the cause because the record contains insufficient evidence to support the commissioner's finding in June 2014 that Marc consented to the commissioner hearing the cause as a result of his participation as a pro se litigant in the *initial* hearing of the

2

parties in March 2014—when the commissioner made several rulings ostensibly *not* in Marc's favor.

The commissioner made this finding at the outset of the June hearing after realizing the parties had not yet been provided with and signed the D-204 form. Although Kelli and her counsel then signed the D-204 form, Marc refused. Rather than taking the simple step of stopping the proceedings and sending the cause back for reassignment, the commissioner instead ruled the tantamount stipulation doctrine applied, despite the absence of any evidence that Marc knew, or should have known, at the outset of the March 2014 hearing that the judicial officer was a commissioner, and despite the evidence in the record, summarized *ante*, that this judicial officer was initially referred to as the "court" and as a "judge" but, unfortunately, not as a "commissioner."

Because on this record there is insufficient evidence to support the application of the tantamount stipulation doctrine, we agree with Marc's contention. As such, we are constrained to reverse not only the judgment of dissolution, but all orders made by the commissioner leading up to the judgment (including any restraining order(s)). (See *Horton*, *supra*, 54 Cal.3d at p. 90.)[1]

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Marc and Kelli were married in October 2006. They had one child together, born in November 2009 (minor), and they separated in January 2014. In January 2014, Kelli

---

[1]    On remand, if the parties deem it necessary to obtain a restraining order, we encourage them to seek, and the court to issue, such an order or orders expeditiously.

[2]    Because the primary issue in this appeal is limited to the commissioner's jurisdiction to sit as a temporary judge, our review of the merits of the case is relatively brief.

3

filed a petition seeking an order regarding child and spousal support, custody and visitation, and attorney fees (petition). The record shows the hearing on the petition took place on March 13, 2014. Although counsel represented Kelli at the March 13 hearing, Marc appeared in propria persona. Significant to the issue on appeal, there is no evidence in the record showing Marc was informed before, or at any time during, the March 13 hearing that Commissioner Darlene A. White, who was presiding over the hearing, was a commissioner and not a judge.

Rather, the record shows at the March 13 hearing, Commissioner White stated that she had read the parties' papers, including Marc's response to the petition; that she had considered the income and expense statements filed by both parties; and that she had read the "mediator's report." After the lengthy argument by Kelli's counsel, Commissioner White asked Marc to respond to each of the subject matters raised in the petition. Marc instead asked to give an "opening statement."

Commissioner White reminded Marc of the purpose of the hearing, noting as follows:

"So I just go through the issues and make my rulings. Eventually you may get to a trial. But for today, it's really just a moving calendar where I go through the issues, understanding -- and I think both parties understand -- everything I do today is temporary because this is a pending dissolution. [¶] So the orders I make on support and custody and all that may or may not change as time goes on depending on either because you agree to do something different in a marital settlement agreement or if the matter goes to trial. So what I do today is temporary. [¶] So I'm not necessarily precluding you from

4

making an opening statement, as much as I'll hear what you have to tell me, but I just need to go through the issues one at a time."

Over Marc's objection, at the conclusion of the hearing Commissioner White made a series of rulings involving physical custody of minor, visitation, child and spousal support, and an award of attorney fees in favor of Kelli. The record includes two minute orders from the March 13 hearing. In both minute orders, the box entitled "JUDGE" says "Darlene A. White." At the bottom of both minute orders, it says "Minutes of the Family Court." Neither minute order identifies White as a commissioner.

At the hearing on June 3, 2014 concerning Kelli's motion to compel discovery and for sanctions, Commissioner White stated that as a "preliminary matter" she needed Marc to sign a "stip." The record shows that Kelli and her legal counsel signed the D-204 form that *same day*—June 3, 2014—but that Marc refused to sign the form.

The D-204 form provided:

"Commissioner Darlene A. White is a judicial officer selected by the judges of the San Diego Superior Court assigned to hear and determine . . . family . . . cases because of . . . her experience, skill and knowledge in handling these matters.

"In order to have a commissioner act as a judge in a case, all parties to the case must agree that the commissioner can act as a temporary judge. If any party does not agree, the case will be reassigned to another judicial officer for today's hearing and all future hearings. A commissioner's authority to act as a judge upon the agreement of the parties comes from article VI, sections 21 and 22 of the California Constitution, and Code of Civil Procedure, section 259, subdivision (d).

5

"To 'stipulate' means you agree to the appointment of Commissioner Darlene A. White as a judge for this hearing and all future hearings and trials in this case, including any contempt proceedings and all post-judgment matters.

"IT IS STIPULATED by the attorneys and/or parties signing below that Commissioner Darlene A. White will hear and decide all present and future matters in this case as a Temporary Judge, including any contempt proceedings and all post-judgment matters.

"Date: 6/3/14[.]"

The record shows Commissioner White was unsure whether the parties previously had signed such a "stip" but noted that, in any event, she has made "rulings on the merits on [the] case on March 13th, 2014." Commissioner White further noted: "So at this point there's a tantamount stip -- looking to see if I have a stip in the file or not. In other words, since I've already ruled on the merits of [the] case, it is too late to now stip me."

Marc in response objected: "Your honor, this ruling was made against my will. *I was not presented with the stip to start with* and as it stands right now, those rulings are in conflict with [the] current situation." (Italics added.)

When asked by Commissioner White what he meant by "conflict," Marc responded: "Meaning that I have *not authorized -- I was not presented with that form on March 13th*, your honor. *I self-represent myself.* I was --- *I did not consent to you being -- with all due respect*, your honor -- *you being the judge of this particular case* and therefore, the request for the non-void of the current ruling that has been put in place. *Since it was made against my will*, I was not presented with this document and I had not signed it as of now." (Italics added.)

When Commissioner White inquired of Marc whether he had done "anything" with respect to the March 13 order, like "appeal or writ or file a motion for reconsideration," Marc responded he had challenged those rulings at the time of the hearing. Although the undisputed evidence in the record shows at the March 13 hearing Marc was unaware that White was a commissioner and only learned that fact at the time of the June 3 hearing, Commissioner White at the June 3 hearing nonetheless found that, because "[Marc] w[as] here that day [i.e., March 13], right?" and because he had failed to challenge the fact she was a commissioner, his participation at the March 13 hearing amounted to a "tantamount stipulation" entitling her to "go forward" with the case. The record shows Commissioner White made this finding despite her statements that she "[didn't] know what happened" to the D-204 form, including whether it was "ever signed or not, signed or lost or not lost."

The record shows Kelli's counsel then agreed with Commissioner White's finding that Marc's participation in the March 13 hearing was an implied stipulation allowing her to act as a temporary judge for the duration of the case. The record shows Commissioner White next informed Marc that, if he was so inclined, he could still challenge her for "cause," but that challenge involved a "different code section."

The record includes four minute orders entered in connection with the June 3 hearing. As before, all the minute orders listed "Darlene A. White" as "JUDGE" and stated in myriad places the "court" was making various rulings concerning the parties. One of the June 3 minute orders provided: "The respondent's request[] for a non-stip is denied. The court finds that there was a[] tantamount stipulation on 3/13/14 order that was made on 4/25/14, which was provided to Respondent as a[] finding and order."

7

As relevant here, Commissioner White issued a statement of decision on December 15, 2015 and entered judgment in dissolution on that same day, which Kelli contends was mostly favorable to her. Marc timely appealed.

DISCUSSION

A commissioner is empowered only to perform subordinate judicial duties. (Cal. Const., art. VI, § 22 ["The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties"].) Article VI, section 21 of the California Constitution provides: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." (See Code Civil Proc., § 259 [setting forth the powers and duties of court commissioners and noting in subdivision (d) that a commissioner shall have the power to "[a]ct as temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties litigant"].)

Thus, while the "jurisdiction of a court commissioner, or any other temporary judge, to try a cause derives from the parties' stipulation" (*Horton*, *supra*, 54 Cal.3d at p. 90), absent a proper stipulation the judgment or order entered by a court commissioner is *void.* (See *ibid.*; see also *People v. Tijerina* (1969) 1 Cal.3d 41, 48-49 (*Tijerina*) [noting under article VI, section 21 of the California Constitution, "a stipulation of the parties was constitutionally required for one not occupying the office of judge to serve as a temporary judge" and further noting without such a stipulation, the order of the commissioner revoking the defendant's probation was void].)

8

As noted *ante*, a stipulation need not be in writing and an express oral stipulation on the record will suffice.  (*Horton*, *supra*, 54 Cal.3d at p. 91.)  As also noted *ante*, a stipulation may be implied under the tantamount stipulation doctrine "if the hearing involves the performance of a judicial function and the party affirmatively participates in the proceeding and does not object to the commissioner who conducts the proceeding until after its completion. ' "An attorney [or party] may not sit back, fully participate in a trial and then claim that the court was without jurisdiction on receiving a result unfavorable to him [or her]." ' (*Ibid.*)  '[A]n *implied* stipulation arises from the parties' common intent that the subordinate officer hearing their case can do things which, *in fact*, can only be done by a judge.' (*In re Mark L.* (1983) 34 Cal.3d 171, 179, fn. 6.)" (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 575.)

Our high court's decision in *Horton* and its treatment of the case of *In re Frye* (1983) 150 Cal.App.3d 407 (*Frye*) inform our decision in the instant case.  *Horton* was a habeas corpus proceeding by a criminal defendant who was convicted of murder and robbery and was sentenced to death, following a jury trial presided over by a commissioner.  Our high court said, "The issue in this case is whether a court commissioner may conduct a trial in a capital case when no oral or written stipulation of the parties authorized him to sit as a temporary judge, but when defense counsel proceeded to trial without objection, *knowing that the judge was a court commissioner.* Petitioner contends that the right to be tried by a regularly appointed or elected superior court judge is a fundamental and personal one that can only be waived after full admonition of the defendant and after he has entered an express waiver of the right on the record.  We conclude that the right is not a fundamental personal one requiring an

9

admonition and express waiver, and that the stipulation necessary to vest the commissioner with authority to try the case can be inferred from the conduct of counsel." (*Horton*, *supra*, 54 Cal.3d at p. 86, italics added.)

Initially, we note *Horton* is distinguishable from the instant case because, in *Horton*, the defendant was represented by counsel who *knew* the case was being heard by a commissioner and who nonetheless actively participated in the proceeding. Here, in contrast, the record shows Marc appeared in propria persona, but, more importantly, he did not know, nor, as shown by the record, have any way of knowing, at the March 13 hearing that White was a commissioner and not a judge.

Indeed, *Horton* expressly distinguished its facts from those in *Frye*—a case which is more similar to our case: "In . . . *Frye*, . . . there was no indication that either counsel or the defendant in a contempt proceeding were aware that the judicial officer sitting on the bench was a commissioner rather than a judge. In fact counsel, who practiced rarely in the particular superior court, was under the impression that the commissioner was a judge. It was in this context that the reviewing court . . . held that the constitutional provision regarding temporary judges 'contemplates a knowing and voluntary assent' that was absent under the facts of the case. Here, by contrast, it is uncontroverted that both counsel and petitioner were aware that the judge was a commissioner; indeed, counsel had appeared before the same commissioner many times and had always stipulated to his presiding in the past." (*Horton*, *supra*, 54 Cal.3d at p. 99, quoting *Frye*, *supra*, 150 Cal.App.3d at p. 409; see *Michaels v. Turk* (2015) 239 Cal.App.4th 1411, 1416 [concluding a domestic violence restraining order against a self-represented defendant was void because there was no evidence in the record that the defendant knew the order

10

was made by a commissioner and not a judge and further concluding the lack of actual or implied consent by the defendant is not "harmless error"].)

Here, the undisputed evidence in the record shows that Marc refused to sign the D-204 form at the June 3 hearing; that he unambiguously informed Commissioner White during that same hearing he objected to her continuing to preside over the cause; that he was never presented with the D-204 form or was otherwise informed at the March 13 hearing that White was a commissioner and not a judge; and that the two minute orders resulting from the March 13 hearing in any event identified Commissioner White as "JUDGE" and referred to her rulings as made by the "court." As such, we conclude Marc's mere participation in the March 13 hearing did not invoke the tantamount stipulation doctrine, thus giving Commissioner White the *constitutional* power to preside over the cause as she ruled at the June 3 hearing. (See *Horton*, *supra*, 54 Cal.3d at p. 99; *Frye*, *supra*, 150 Cal.App.3d at p. 409.)

Indeed, as the above authorities clearly show, it was not enough for Marc merely to be present at [i.e., "You were here that day, right?"], and participate in, the March 13 hearing for the tantamount stipulation doctrine to apply, as Commissioner White found. Nor was Marc required to challenge the fact she was a commissioner before the June 3 hearing in order to preserve his objection, as she also found.[3] Absent a proper stipulation by Marc, the judgment of dissolution subsequently entered by Commissioner White was

---

3    Such a finding created a classic Catch-22: requiring Marc, on the one hand, to challenge her status as a commissioner when, on the other hand, he was unaware of that status.

11

void.[4] (See *Horton*, *supra*, 54 Cal.3d at p. 90; see also *Tijerina*, *supra*, 1 Cal.3d at p. 49; *In re Steven A.* (1993) 15 Cal.App.4th 754, 767, 772 [concluding a commissioner's order terminating family reunification services was void because a stipulation signed by father applied only to proceedings up to the dispositional hearing and not to any " 'new proceedings,' " including a permanency planning hearing, after the commissioner refused the father's request to withdraw his stipulation and continued to preside over the matter].)

In reversing the judgment of dissolution in this case, we are well aware of the significant resources already expended by the parties and the court. However, when it became clear at the June 3 hearing that the parties had not signed the D-204 form in connection with the March 13 hearing, that Marc was unaware at the March 13 hearing that White was a commissioner and not a judge and that he was unwilling to stipulate expressly at the June 3 hearing to her continued involvement in the cause, as the record undisputedly shows, Commissioner White *then* could have—and should have—vacated her previous order(s) and, as noted by the D-204 form, reassigned the case to another judicial officer for that hearing and "all future hearings." Instead, the case went forward and, more than a year later, ended in a *void* judgment in dissolution.

---

4       The right to appeal is wholly governed by statute, and appellate courts have no jurisdiction to consider appeals, except as provided by statute. The primary statute governing the right to appeal is Code of Civil Procedure section 904.1. In essence, section 904.1 codifies the final judgment rule, which provides that review of intermediate rulings—such as Commissioner White's finding in the instant case that Marc impliedly stipulated to her continuing to preside over the cause—should await final disposition of a case. (See *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1101 [noting the "theory" of the final judgment rule is that " ' "piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case" ' "].)

In the future and to avoid a repeat of this case, we strongly encourage judicial officers seeking to act as temporary judges to inform the parties and/or their counsel *at the outset* of the cause of their status as commissioners and obtain either a written stipulation, using a form similar to the D-204 form at issue here, or an oral stipulation *on the record* to their acting in that capacity.

## DISPOSITION[5]

The judgment of dissolution is reversed. On remand, the cause should be reassigned as expeditiously as possible to another judicial officer. Each party to bear his/her own costs of appeal.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

---

[5] In light of our decision, we conclude it is unnecessary to address Marc's additional arguments on appeal.