Filed 11/3/25  Amaral v. Freire CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| WELLINGTON AMARAL, | C102385 |
| Plaintiff and Respondent, | (Super. Ct. No. 24FL03026) |
| v. | |
| VANESSA FREIRE, | |
| Defendant and Appellant. | |

In this dissolution of marriage action, Vanessa Freire appeals from the order denying her request for a permanent domestic violence restraining order (DVRO) against her husband (Wellington Amaral), which sought protection for herself and the parties' daughter.  Freire also challenges the temporary child visitation order.  Freire, whose primary language is Portuguese, argues the family court committed reversible error by accepting, without an interpreter present, a written stipulation allowing a court commissioner to preside over this matter as a temporary judge.  In a related argument,

1

Freire contends the family court exceeded its jurisdiction in denying her request for a permanent DVRO, as there was no valid stipulation allowing a court commissioner to preside over this matter. Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At the outset, we note that Freire has elected to proceed on a clerk's transcript only. Thus, the appellate record does not include a reporter's transcript of the relevant oral proceedings or a suitable substitute. (See California Rules of Court, rule 8.120(b)[1] [listing the three acceptable ways to present the record of the oral proceedings from the superior court: reporter's transcript, agreed statement, or settled statement].) This type of appeal is considered a "judgment roll" appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082; *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.) In reviewing such an appeal, "[t]he trial court's findings of fact and conclusions of law . . . are presumed to be supported by substantial evidence and are binding upon us, unless the judgment is not supported by the findings or reversible error appears on the face of the record." (*Krueger*, at p. 207.)

In support of her judgment roll appeal, Freire has provided us an incomplete and very limited record, which spans a total of 13 pages and only consists of two written court orders and the notice of appeal.[2] As a consequence, our ability to recite the background of this case is significantly hampered by the scant record.

It is undisputed that, at some point, Amaral and Freire were married. In July 2024, Amaral filed a petition for dissolution of marriage. Around the same time, Amaral made a request for a child visitation order.

---

[1] Further rule references are to the California Rules of Court.

[2] The written orders were issued after hearings in August and September 2024. In this opinion we refer to these hearings as the August 2024 hearing and the September 2024 hearing, respectively.

In early August 2024, Freire filed a request for a DVRO against Amaral under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.).[3] A temporary restraining order was issued that same day against Amaral.[4]

Several weeks later, in late August 2024, a hearing was held on Freire's request for a permanent DVRO. Although not included in the appellate record, it is undisputed that the parties executed a written stipulation at or before the hearing authorizing a court commissioner to preside over this matter as a temporary judge.

In a written order issued after the hearing, the commissioner (court) noted that Freire was proceeding as a self-represented litigant, and that "[t]he parties were informed that a Commissioner [was] sitting as a temporary judge and no objections were raised." In continuing the matter to allow an interpreter to be present to assist Freire, the court explained that Freire was "in need of a Portuguese interpreter" but "one was not available without advance notice." Over Freire's objection, the court granted Amaral's request for a "3-2-2 [child] visitation schedule." In opposing the visitation schedule, Freire argued that Amaral was "alienating" their daughter from her and that Amaral had purchased a "dagger" and was performing "rituals."

Around a month later, in late September 2024, the parties appeared for the continued hearing on Freire's request for a permanent DVRO. Freire proceeded without counsel but was assisted by a Portuguese interpreter, who appeared remotely (via Zoom).

---

[3] Undesignated statutory references are to the Family Code.

[4] The DVPA authorizes short-term ex parte restraining orders pending a hearing and long-term (or permanent) restraining orders issued after notice and a hearing. (*In re Marriage of A.M. & R.Y.* (2025) 110 Cal.App.5th 1115, 1120, fn. 1.) A "permanent" restraining order is limited to an initial duration of no more than five years, subject to renewal for five or more years or permanently. (§ 6345, subd. (a).) A DVRO may issue in a marital dissolution action. (§ 6221, subd. (a).) To obtain a DVRO, the petitioner must present "reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).)

3

Both Freire and Amaral testified at the hearing, which included conflicting testimony as to how their daughter received bruises on her arm.

After the hearing, the court issued a written order, which stated, in relevant part, as follows:

"[Freire] attempted to withdraw the stipulation she had previously signed for this Commissioner to hear the matter as a Temporary Judge. The Court requested legal authority to support her request that she could seek to withdraw the stipulation. [Freire] stated after the last court hearing, she went back to the Sacramento Justice League[5] and they told her to withdraw her stipulation after the last court hearing. [Amaral] was opposed to allowing [Freire] to withdraw her stipulation, believing it to be an attempt at further delay. [Amaral] also noted he could provide [evidence showing Freire] conducting an on-line tutorial regarding dogs spoken in English. Further, [Amaral] asserted [Freire] had not complied with the first visitation order . . . .

"[Freire] asserted she uses a translation [application] for translation. She asserts she used an interpreter to assist her in filling out all the paperwork, although the Court noted there was no evidence to support such. She further asserted that while she has been in the [United States] 12 years, she has only spoken Portuguese for the last 9 years. She acknowledges she is able to communicate and understand the English language, but wants an interpreter present to ensure she does not miss any of the specifics of legal terminology or context since English is her second language. The Court noted Child Protective Services has been involved and [Freire] attached texts of exchanges she had with a Child Protective Services social worker in English. [Freire] asserted she uses a translation on her text messages as well. Despite testifying she has only spoken Portuguese for the last 9 years, [Freire] admitted when the Child Protective Services

---

[5] The Sacramento Justice League represents Freire on appeal, although it did not represent her in the proceedings below.

social worker came to see her, an interpreter was not present, nor did she request one. [Freire] further testified she was not trying to prevent visitation when [Amaral] was supposed to have supervised visits, there was difficulty with the need for a Portuguese interpreter as that is the only language her daughter speaks.

"Given the totality of circumstances and the prior orders made by this Commissioner, the Court denied the request to withdraw the stipulation, finding that at the last hearing, when the matter was continued, [Freire] was able to very competently speak the English language and was able to readily participate in the hearing regarding [Amaral's] request for a visitation order for the child, having no apparent difficulty understanding what was occurring in Court. Throughout the hearing that continued, the Court counted at least 6 times where [Freire] began responding to a question prior to the interpreter interpreting the question in Portuguese. Further, on multiple occasions, [Freire] began her answer in English.

"[Freire] testified in support of her motion [for a permanent DVRO]. She testified [Amaral] ha[d] his pineal gland removed and his behavior became very different. She testified she was being harmed because she did not know the address where [Amaral] was exercising his parenting time, and alleged [Amaral] was not providing adequate care for their child because he had an aunt come to help him with child care. She alleged her daughter came home with purple marks on her arm and then recorded her daughter saying she was hiding in the closet from her father, and he thought she was a toy and he shook her by the arms. [Freire] wanted to play this video on her cell phone. The Court advised [Freire that] she would need to submit this evidence on a USB drive and play it in court, along with a transcript and it would need to be translated. [Freire], despite telling the Court less than 10 minutes earlier that her daughter only spoke Portuguese, testified the video was in English and did not need translation.

"In response to [Amaral's] evidence regarding his immigration status, [Freire] testified [Amaral] told her that his attorney said if he married a citizen and had a child, no

5

one could make him leave the country. She further acknowledged [Amaral] told her there was not sufficient money for him to be adding money to the bank account, or to pay for day-care so she could work outside the house, and that he cut up the credit cards so she would have no money for gas. She continued to believe the dagger was for satanic purposes and her family had told her he would try to use it to harm her, despite her own attachment to one of the pleadings reflecting the dagger is a letter opener and usually dull and not able to cut.

"Throughout her testimony, [Freire] was very focused on the marriage dissolving and her need to get custody of the child. She testified when she sought assistance, several places told her to file for divorce and get a custody order, so she filed for the [DVRO].

"[Amaral] testified in opposition to the motion [for a permanent DVRO]. His testimony was consistent with his filed response. He denied any of the actions [Freire] alleged he engaged in were domestic abuse, but rather were attempts to maintain the safety of the child, avoid going further into debt and his many attempts to explain this to [Freire] before he put a freeze on the credit cards as there was no more money to pay them. [Amaral] also testified about the purple marks on the child's arms, which he says she arrived with for his parenting time. When he asked the child how she got them, she said he caused the marks by holding her in the air like a doll and shaking her. He inquired who told her that and the child replied her mother had said it.

"The Court received testimony from both parties, observed their demeanor, and assessed their credibility. Having considered the evidence and testimony submitted, based upon the totality of circumstances, the Court finds insufficient evidence to determine acts of abuse, as defined within the Family Code, have occurred. [Freire] was not a credible witness and provided inconsistent testimony on significant issues.

"The request for a [DVRO] is denied.

"[T]he Court maintains the current orders for a 3/2/2 parenting arrangement

6

between the parties. The Court reminded the parties that neither should attempt to influence the child regarding allegations of abuse by the other parent."

In October 2024, Freire filed a timely notice of appeal. The matter was fully briefed and assigned to this panel in August 2025. Freire, who did not file a reply brief, is represented by counsel on appeal, although (as noted *ante*) she proceeded as a self-represented litigant in the family court.

## DISCUSSION

### I

### *Appellate Rules of Procedure*

"It is well settled . . . that a party challenging a judgment [or order] has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) " ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*) [failure to provide an adequate record on an issue requires that the issue be resolved against the appellant]; see *Jade Fashion & Co., Inc. v. Harkham Industries, Inc*. (2014) 229 Cal.App.4th 635, 644 ["Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct, and on that basis, affirm"].) "[A] record is inadequate, and appellant defaults, if the appellant predicates error only on the part of the record he provides . . ., but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed." (*Uniroyal Chemical Co. v. American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 302; see *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003 [issues raised without the provision of an adequate appellate record are "deemed waived"].)

7

Rule 8.120(b)[6] provides: "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following: [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137." Here, as previously noted, the record consists solely of a partial clerk's transcript, spanning a mere 13 pages. In the absence of a reporter's transcript or other record of the oral proceedings before the trial court, the appeal is treated as "an appeal on the judgment roll." (*Allen v. Toten, supra,* 172 Cal.App.3d at p. 1082; *Krueger v. Bank of America*, *supra*, 145 Cal.App.3d at p. 207.) On such an appeal, "we ' "must conclusively presume that the evidence is ample to sustain the [trial court's] findings," ' " and our "review is limited to determining whether any error 'appears on the face of the record.' " (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324-325.)

"[T]he absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court. This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized

---

[6] Further rule references are to the California Rules of Court.

8

the order complained of, it will be presumed that such matters were presented." ' " (*Jameson, supra*, 5 Cal.5th at pp. 608-609.)

With these procedural rules in mind, we turn to Freire's appellate contentions.

II

*Stipulation to a Court Commissioner as a Temporary Judge*

Freire argues that the court erroneously granted Amaral's request for a child visitation order at the August 2024 hearing. In Freire's view, the court committed reversible error (via a due process violation) by accepting, without the presence of a Portuguese interpreter, the parties' written stipulation authorizing a court commissioner to preside over this matter as a temporary judge. In a related argument, Freire contends the court erred by refusing to allow her to withdraw her stipulation, because it was invalid as a Portuguese interpreter was not present when it was executed. In Freire's view, there was no mutual consent to the terms of the stipulation because "she lacked the literal understanding of the terms of the agreement." Freire insists that the court's orders issued after the August and September 2024 hearings are thereby void for "lack of jurisdiction."

A. *Relevant Legal Principles*

The California Constitution provides that parties litigating a cause may stipulate that the matter may be heard and decided by a temporary judge, which includes a court commissioner. (*In re Marriage of Djulus* (2017) 10 Cal.App.5th 1042, 1044; *Foosadas v. Superior Court* (2005) 130 Cal.App.4th 649, 654-655; Cal. Const., art. VI, § 21.) A commissioner may serve as a temporary judge only upon the express or implied stipulation by the parties that the particular proceeding may be conducted by a temporary judge. (*Foosadas*, at p. 652; see *Rooney v. Vermont Investment Corp.* (1973) 10 Cal.3d 351, 360 [the jurisdiction of a court commissioner, or any other temporary judge, to try a cause derives from the parties' stipulation]; Code Civ. Proc., § 259 [setting forth the powers and duties of court commissioners and noting in subdivision (d) that a

9

commissioner shall have the power to "[a]ct as temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties litigant"].)

" ' "The appointment of a temporary judge to hear a particular 'cause' carries with it the power to act until the final determination of *that proceeding*." ' " (*Gridley v. Gridley* (2008) 166 Cal.App.4th 1562, 1581.) In a marriage dissolution action, a stipulation by the parties authorizing a temporary judge to hear and try the matter, includes a request for a DVRO. (*In re Marriage of Reichental* (2021) 73 Cal.App.5th 396, 403-404.)

Our Supreme Court has held that a stipulation is required to qualify a court commissioner to act, and that without such a stipulation, any ruling by or judgment of the commissioner is void. (See *People v. Tijerina* (1969) 1 Cal.3d 41, 48-49; *In re Horton* (1991) 54 Cal.3d 82, 90; *In re Frye* (1983) 150 Cal.App.3d 407, 409.)

Stipulations are governed by general contract principles. (*In re Frye, supra,* 150 Cal.App.3d at p. 409; *Semprini v. Wedbush Securities Inc*. (2024) 101 Cal.App.5th 518, 528 [stipulations are interpreted in accordance with the ordinary rules of contract interpretation, which require giving effect to the mutual intention of the parties at the time the stipulation was entered].) Thus, the constitutional requirement of a "stipulation of the parties litigant" as a prerequisite to a commissioner's acting as a temporary judge (Cal. Const., art. VI, § 21) "contemplates a voluntary and knowing assent." (*Frye,* at p. 409; *Caballero v. Premier Care Simi Valley LLC* (2021) 69 Cal.App.5th 512, 518 (*Caballero*) [" 'An essential element of any contract is the consent of the parties, or mutual assent' "].) Such consent must be mutual, freely given, and communicated by each party to the other. (Civ. Code, § 1565.)

It is well established that a party who signs a document (here, the stipulation) is presumed to have read it and to understand its contents. (See, e.g., *Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1162, fn. 6; *Stewart v. Preston Pipeline Inc*. (2005) 134 Cal.App.4th 1565, 1588-1589.) Ordinarily, a party who signs a document,

which on its face is a contract, is deemed to assent to all its terms. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc*. (2001) 89 Cal.App.4th 1042, 1049.) In other words, absent a vitiating factor (e.g., fraud), a party's signature is an objective manifestation of express consent. (*Caballero*, *supra*, 69 Cal.App.5th at p. 518; *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027.)

Generally, a party cannot avoid the terms of a contract on the ground that he or she "has limited proficiency in the English language. If a party does not speak or understand English sufficiently to comprehend a contract in English, it is incumbent upon the party to have it read or explained to him or her." (*Caballero, supra*, 69 Cal.App.5th at pp. 518-519; see *id*. at p. 518 [absent fraud or overreaching, a party's inability to read English and limited ability to speak or understand English does not alter the conclusion that his signatures and initials on the contract manifested his agreement to its terms]; *Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 160, 163 [release form in English valid even though the signatory could only read Greek].)

B. *Analysis*

We reject Freire's contention that reversal is required because there was no valid stipulation for a commissioner to preside over this matter. The appellate record does not include the parties' written stipulation to the appointment of a court commissioner, and there is no record of the oral proceedings in August 2024 when the stipulation was presented to the commissioner here. The limited record before us simply reflects that, during the August 2024 hearing, the parties were informed that the commissioner was sitting as a temporary judge and no objections were raised at that hearing. On appeal, Freire insists that the commissioner erroneously accepted the parties' written stipulation because there was no mutual consent to the terms of the agreement. No valid agreement existed, in Freire's view, because she did not understand the difference between a court commissioner and a superior court judge "due to a language barrier." But that view is not supported by the record.

When faced with the uncertainty created by an incomplete record, the long-established principles of appellate procedure inform us how to proceed. Freire, as the appellant, has the burden of affirmatively demonstrating a prejudicial error occurred. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, 566; *Jameson, supra*, 5 Cal.5th at pp. 608-609.) Without a reporter's transcript (or suitable substitute) and/or other relevant documents, Freire cannot meet her burden because the applicable principles of appellate procedure require us to presume the court acted properly. (See *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039 [in the absence of a reporter's transcript and other documents, we presume the judgment is correct].)

Here, the limited appellate record reflects that, at the August 2024 hearing, the court determined that Freire properly consented to a commissioner presiding over this matter as a temporary judge. In making this determination, the court found, as it explained in the written order issued after the September 2024 hearing, that Freire was able to communicate and understand the English language. Indeed, the court specifically found that Freire "was able to very competently speak the English language and was able to readily participate in the hearing" and had "no apparent difficulty understanding what was occurring in Court." And it is undisputed that Freire signed a written stipulation for the appointment of a court commissioner at (or before) the August 2024 hearing.

On this record, Freire cannot meet her burden to show the absence of a valid stipulation. (See *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 575 [by electing to proceed without a transcript of the oral proceedings, defendant could not meet his burden of showing that he did not orally stipulate on record to commissioner].) Further, there is nothing on the face of the record supporting the conclusion that the court erred in denying Freire's request to withdraw her written stipulation to the appointment of a court commissioner. Indeed, the record does not reflect that Freire satisfied the procedural or substantive requirements for such relief (e.g., noticed motion, good cause for relief). (See

12

Rule 2.831(f).)[7]  As a consequence, Freire's appellate contentions, which are predicated on the existence of an invalid stipulation to a court commissioner, fail.  Our review on this judgment roll appeal is limited to "determining whether any error 'appears on the face of the record.' "  (*Nielsen v. Gibson*, *supra*, 178 Cal.App.4th at pp. 324-325.)  And on the face of this record, we find no error.[8]

---

[7]  Either party may move the court for leave to withdraw their stipulation for appointment of the temporary judge and thereby terminate the appointment.  (Rule 2.831(f).)  To obtain such relief, the motion must be based on declarations establishing "good cause" for permitting the party to withdraw the stipulation.  (*Ibid*.)  A noticed motion is required, and the matter must be set for hearing by the presiding judge or a judge designated for this purpose (rather than on the normal law and motion calendar).  Copies of the moving papers must be served on opposing parties and the temporary judge.  (*Ibid*.)

[8]  Given our conclusions, we need not and do not consider Amaral's argument that the temporary child visitation order was not appealable.  Nor do we consider Freire's due process argument or her related prejudice argument.  There is nothing on the face of the record showing that Freire raised a due process argument in the proceedings below.  (See *Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 95 [declining to review an issue the trial court did not decide]; *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997 [" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were [decided]' "]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 285-286 [an appellate court will not consider claims of error on appeal that could have been, but were not, pursued below].)  But even if we were to consider the merits of Freire's due process argument, we would find that it provides no basis for reversal under the circumstances presented.

13

## DISPOSITION

The challenged orders are affirmed. Amaral is entitled to recover his costs on appeal. (Rule 8.278(a).)

/s/
Duarte, Acting P. J.

We concur:

/s/
Boulware Eurie, J.

/s/
Feinberg, J.